Is your argument really that the Samuels 851 with its nubby, bumpy, prickly bumps constitutes a ridge? Yes. I don't understand. It doesn't comport with any plain meaning of ridge that I can envision. Yes. I think in order to understand, it's useful to look at the prosecution history of the Samuels patent, the patent that we're talking about, the 575 patent. You keep pointing to that, but that amendment, that proposed amendment, whether or not it was required, but it was never adopted. No, there was an amendment. It was entered into the record. Let me explain what happened, and I think you may know what happened, but I want to make sure that the... Before you explain what happened, why don't you just tell me how in the world those little nubby, bumpy things could be a ridge? Ridge has a plain and ordinary meaning. I don't see how those nubby, bumpy things can constitute a ridge. Yes. The plain and ordinary meaning of ridge is, as the board said, a raised strip, and they said as a plow track. Continuously elevated crest for some distance, that's what those definitions call it. But I don't think that's what the board found. The board found that it was a raised strip, and the question is whether that raised strip has to be continuous, or can it be a series of inflatable bumps? In this case, there's perhaps 30 bumps around the edge of a... The board didn't find that Samuels and those nubby bumps constituted a ridge. No, they didn't. No. No, they didn't. The reason they didn't is because they didn't look at the file history of the 575 patent. I know you want to go to the file... I promise you'll have plenty of time to get to the file history, because we want to hear what you have to say on that, too, but I just don't understand how there's any plain meaning that can encapsulate this. The only example that you give in your spec, everything I know about ridge suggests a continuity to the elevation, not just bump, bump, bump. Under your definition, it seems when I look down the street at a series of spaced telephone poles that are evenly spaced, you're going to tell me I'm looking at a ridge. No. Under that circumstance, I'm not going to tell you you're looking at a ridge. In fact, I'm not going to tell you you're looking at a ridge when you consider, for example, the barbs of Samuels. What I'm going to say that you're looking at a ridge is if you see a ridge which has discontinuities, namely dome shapes that together form a ridge. I think one way to think about it is if you have a line of people, you have a... If you have a person in every single spot, it's nevertheless a line of people. I think in the same way... A line of people isn't a ridge. No. But a line of people is a lot like the nubby, bumpy things. It is a lot like the nubby, bumpy things, which is, of course, my point. That is that a ridge can be a... It doesn't have to be continuous. The reason I say that, Your Honor... So you're saying each nub is itself a ridge? No, I'm not. I didn't think so. No, no, no. Because it has to continuously go around the circumference. It does. It has to be a circumferential ridge, which means we are contending that there is a single ridge that goes around the entire... Made up by 10 people standing in a line. Yes. Made up by these inflatable protrusions, bumps that go around the entire edge. The only example you give in your spec that would ever make any sense in terms of understanding ridge that way is the Blue Ridge Mountains. Do you actually think that's... No, I think the reason we put that... I agree that's a fanciful example just to show that a ridge doesn't have to be a strip. But I... I accept that it is. Do you know why they're called the Blue Ridge Mountains? I thought to myself, you're going to kill whatever associate put this in your brief because you spend two or three pages in the blue brief and you bring it up again in the gray, and you even include this lovely topographical map of the mountains. Do you know why they're called the Blue Ridge Mountains? I don't, Your Honor. No. Wouldn't it have made sense to Google that term before you spent literally three pages of your blue brief using that as an example? Yes. Because you know what? Now you're going to get your civics lesson from me. Because my fourth grader took Virginia, because we live in Virginia, and had to do a project on the Blue Ridge Mountains. They're called the Blue Ridge Mountains because there are trees on those mountains, and all of this is available. Wikipedia, Google like crazy. So whatever associate put it in there, honestly, you're not going to be pleased with. They're called the Blue Ridge Mountains because the trees on those mountains emit isoprene, which is a chemical that causes the appearance of a blue haze. So when you look at the mountains, there appears to be a blue haze continuously running throughout the mountain line, and it's the blue haze, which is called the Blue Ridge. It has nothing to do with the mountains. Well, thank you, and I apologize if this is distracting, because I don't want to be distracted from the main part of our argument. In order to understand our argument, it is absolutely critical that you understand what happened in prosecution. And if you'll permit me, I would like to just take a moment and explain what happened in prosecution. Because in prosecution, there was an original claim. It was a dependent claim, and it had the term circumferential ridge, the very term we're talking about. It used the term circumferential ridge. What the examiner did is the examiner rejected that claim under 102 as being fully anticipated by the Samuels prior art. And what's important is what happened next. Because what happened next is that in response to, well, I should say, in making that rejection, the examiner stated- I don't mean to interrupt you, but you have to assume we've read the briefs, and you've spent a lot of time in your blue brief on this and a lot of time in the gray brief. And so we understand the point that you're making, is that the inventor was willing to make an amendment that you think would have supported your view of this claim of construction. But that amendment was never entered. And in fact, the claim was allowed without that amendment. And the board found that, therefore, it was not going to find that to be particularly meaningful. Are we supposed to disagree with that conclusion? Yes, Your Honor, and here's why. First, the amendment was entered. It isn't in the final claim, but it was entered because it- But it was proffered. It was entered, and this must be a terminology issue. But the allowance was not dependent upon the amendment because the language in the amendment was never incorporated into the claims. The language was incorporated into the claims, and then there was an interview. It's not as allowed. No, no, no, no. It's not in the allowed claims. But there was an interview, and that language was, it wasn't just removed. They added other limitations. Specifically, they added a negative limitation to the claim, which the Mr. Samuels, Dr. Samuels, was using to get around the Samuels prior arts. So obviously, the examiner didn't think that the amendment was necessary to allow the claims. Well, you're now, Judge O'Malley, speculating about what the examiner or what the applicant believed. You don't have to speculate very much when they don't show up in the final, those words that you're relying so heavily on don't show up in the final claim. I would agree with you if that word was just taken out of the claim and that was the end of that. Then obviously, the examiner and Dr. Samuels agreed that that word was not necessary. But that's not what happened. What happened is that word was removed, and other limitations were added to the claims to distinguish Samuels. And specifically, what was added was a negative limitation that said these barbs don't pierce the body. And so that was the limitation that allowed this claim to be passed. That's what all this back and forth with the examiner is. You don't always know exactly what the examiner is concerned about, and it's clear the examiner was concerned about something different. I would like to direct your attention to the Litman v. Whirlpool case, because that is a case where there was an examiner interview, and after the fact, when they got to district court, they were arguing about what happened at that interview. And in that case, this court made it very clear, very clear that it is not the obligation of the patent examiner to say what happened. But if something favorable happened in an interview, it is the obligation of the applicant to raise it then. And by not raising it, they have acquiesced to that term being a ridge. And Judge Moore, perhaps I don't know exactly what a ridge is as it pertains to this claim, but what I do know, I'm sorry, what I do know is that the Samuels prior arc has a ridge. I know that because the examiner has told us that, and the applicant has acquiesced to that, and now we're sitting back trying to get... Isn't Litman distinguishable because, unlike here, the examiner actually accepted the written filing and characterized it as a CIP? That didn't happen here, right? No, but something favorable happened to the applicant, and it wasn't a record, so we can't speculate. And the reason I say that is the patent prosecution history has a very important function of serving the public notice about what the patent means and what it doesn't mean. This is part of the intrinsic evidence, which is some of the most valuable evidence. And I would argue that it shows the opposite, that it shows that even if someone was willing to make that change, that that change wasn't deemed meaningful. And now, what the original examiner might have thought or might have gone back and forth with is not as important to me as what the board found and whether or not the plain meaning of ridge can include all of these indentations. Well, let me tell you what the board said, because I think that's really important. What the board said in the request for reconsideration, the board said the following, and this is in response to the same argument I'm making right now. They said the board's decision in rehearing, the board clarified and said that it did not adopt TriVascular's proposal because it was inconsistent with the specification's description of circumferential ridges as raised strips. That statement is interesting because it can't possibly be true. And the reason I say that is the word strip does not appear in the specification. The raised strip does not appear in the specification. And so what the board is doing is they are not considering the file history. And as this board said, in both the Toxicon case and also other cases, and in particular, I'm actually thinking about the Temple Lighting case, because the Temple Lighting case- Well into your rebuttal time, if you'd like to keep going, you can. Yeah, I'll just finish this thought. And that is, in the Temple Lighting case, the court did highlight the importance of the intrinsic evidence and the fact that it's oftentimes more probative than the extrinsic evidence, and also additionally that, in fact, statements or acquiescence of the applicant can be used to broaden the scope. It's not only for narrowing the scope. And with that, I thank you. Counsel, since we're discussing things Canadian today, are you familiar with Regina versus Ojibwe? I'm not, Your Honor. Look it up sometime. OK. Is there a point in that that you'd like me to respond to? No. OK. Thank you, Your Honor. Very edificational. OK. Thank you. Mr. Patruski? If it pleases the court, I think the issue of this continuous or discontinuous file history is odd for a couple of reasons, most importantly because it really doesn't have any bearing on the ultimate decision of the board. The board found that the prior art didn't show inflatable protrusions. And that's really at the heart of the invention. It's the heart of the grant. It's not irrelevant when it's... It's not dispositive. But you've got an inventor who was willing to basically feed right into the argument that your opponent is making with respect to the proposed amendment. It's a bit odd that he somehow, they're using the word acquiescence to a broader claim. But in this case, the board correctly found that it really didn't inform them on the question of what a circumferential ridge is. And this idea that... It would have been better if he had said, well, that's not a circumferential ridge, right? A bunch of bumps can't be a circumferential ridge. But if it helps you examine, or I'll put the word continuous in front to doubly reinforce what I mean. Oh, during prosecution. Yeah. It might have. I mean, it's hard for me to go back to what the prosecutor did. But in this case, the board clearly understood that. And your blue ridge analysis, when I read it in the brief, being something that wasn't in the record, I think of a ridge like that, I thought too, that it really was a spine that was basically one continuous spine, which is what people think of a ridge. And that is how the board viewed the circumferential ridge, as some kind of continuous raised strip. Appropriately enough, the Blue Ridge Mountains are full of what they call gaps. True, but they don't include valleys that go all the way down to sea level. In other words, the bumps in Samuel State 5-1 are discreet. Which is why they're not a continuous ridge. Not a continuous ridge. And in fact, the board referred them as recesses in many parts of the decision for that reason. Because they really aren't something they could combine with Todd to get the invention. So putting that issue aside, I think it's quite clear that the construction under the BRI that the board used for an inflatable protrusion, is it itself has to be inflatable. And that's a proper construction. It's directly out of the patent, column 3, line 54, thereabouts, it talks about the inflatable ridges and how they are fluid communication and they are inflatable. And there was some colloquy at the hearing before the board about this item. If the board had not found that the ridges in Todd were not disclosed or proven to be inflatable, you'd have a much harder case, wouldn't you? I mean, there's a difference. It's a catheter versus a stent, but it seems like you'd have a much harder case if those Todd ridges were themselves inflatable. If the Todd ridges were inflatable, you'd still have to have the circumferential ridge. They have a circumferential ridge. Todd shows one, two, three, four, five circumferential ridges. Yes, I mean, if Todd showed our invention, it would be a big problem. Because that's what figure one of our invention shows. How it works if it shows our invention. I mean, if it shows the circumferential inflatable tubes, but they didn't. The drawings didn't show it. It's described in a way that doesn't indicate that they're inflatable. And we had experts and we had witnesses. And this was a trial. They had no experts. They had no witnesses. And the board relied heavily on those witnesses at the joint appendix page 20, for example, and went through that analysis. There was substantial evidence as to the lack of combination in the prior art. I don't think you can read Todd in any way that those were somehow inflatable. The colloquy I was getting at, which I think addresses your point, is that they asked at the hearing, would you consider a car that is sitting on inflatable tires to be an inflatable car? No. Would you consider treads on a tire to be inflatable treads because they sit on an inflatable tire? No. And that was really directly at the heart of distinguishing what Todd shows, which is a solid rubber seal, in effect, or round piece. They're not inflatable. They sit on a device that I suppose is inflatable, but they're not themselves inflatable protrusions. And that goes to the very heart of the ultimate decision that they made. And that's why we believe the patent was not invalidated because there was no prior art showing that. Do you have anything further? I really don't. It seems to me to be quite clear. Thank you. Mr. Poole. Thank you. Mr. Poole. May it please the court. I just have two quick points on this. I'd like to make the first one is fairly trivial, but the reason the board referred to what I'm calling a ridge is, the reason they refer to it as recesses is, in fact, in the Samuels 851 prior art, they are recesses until they are inflated. And the purpose of those recesses is very important. You have a recess, and in the prior art, you have a barb. And when you position this stent in its proper location, you don't want that barb scraping against the wall. And so you have a recess. And then when you inflate, of course, the recess pops out. It's called domed. It pops out, and then the barb, of course, goes into the body. And so one thing that at one point that I wanted to make. It's the barb rather than the ridge that creates the connection or the friction. The ridge actually physically touches, and the expert, Dr. Clark, confirmed that the bulge actually does make connection. But the point I want to make is that, Judge Moore, even if you don't believe me that those bulges are former ridge, it's really important to think about KSR and a KSR analysis. And as I was explaining the Samuels 851 prior art, think about the problem that one might have with barbs. It's the problem that's being solved by the patent in suit. And that is a barb creates damage to the human body. And so what is the obvious thing to do? The only thing to do? Well, you take off the barb, and you replace it with something else. You replace it with something that's not going to pierce the body. And in the simple example, if those series of inflatable bumps are, in fact, the ridge, then it's easy. You put on the Todd bumps. On the other hand, if you want to use the Todd ring, the ring is not the inflatable ridge. The ring is just what you want to replace the barbs with. So if you're going to do that, what would you do? You would, of course, have to modify the prior art Samuels to have a ditch, if you will, to accommodate that ring. And then you would pump it up, and the ring would pop out and serve the exact same purpose as the barb. You wouldn't need a ditch. You wouldn't need a ditch at all because if there's nothing pointy at the end, you don't need the recess. The reason for the ditch is because of the barb. That's not exactly true. The reason for the ... It is, in a sense. But it's also important to have that if you have a rough surface, if you have something with Todd. You want to take advantage of the invention of the Samuels 851 prior art, namely, that is to protect the surface while you're moving this stent in and out. And if you move the stent in and out and there's either a rough surface or there's knobs, you want to avoid that. The fact that you might want to protect the surface in both inventions doesn't mean that they're doing it in the same way. What Samuels prior art teaches us is that what you're using to ultimately make contact with the human body can be protected from the human body while you're moving this thing in and out. And so if the problem is those barbs are no good, those barbs cause problems, then you'd We submitted a lot of prior art, but Todd in particular. You just substitute that for Samuels, but you still take the advantage of Samuels. You don't forget about the advantages of Samuels, namely, having that device retracted. That seems to me to be the simple KSR analysis where you've got a mechanical device. You're simply replacing one mechanical device for another. And in fact, the board had no problem with that in the institution decision. Well, we're way over our time, so we have to stop here. I thank both counsel for their argument. The case is taken under submission.